UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**TETRA TECHNOLOGIES, INC.**               **CIVIL ACTION**

**VERSUS**                                  **No. 06-3736**

**LOUISIANA FRUIT COMPANY**                 **SECTION: I/5**

## ORDER AND REASONS

Before the Court is a motion to dismiss filed by defendant, the Louisiana Fruit Company ("LA Fruit"), for failure to join a party, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted. Plaintiff in this matter is Tetra Technologies ("Tetra"). For the following reasons, defendant's motion is **GRANTED**.

### *BACKGROUND*

Defendant, a Louisiana corporation, is the owner of land located in Venice, Louisiana. In 1984, defendant leased this land to International Drilling Fluids, Inc. ("IDF"); IDF is a Delaware corporation with its principal place of business in Texas.[1] The original term of the lease was five years, with four five-year renewal options.[2] At the inception of the lease, the leased land was

---

[1] Rec. Doc. No. 1-2, p. 1.

[2] Rec. Doc. No. 1-2, p. 1.

vacant.[3]  The lease granted IDF the exclusive possession and use of the premises, including the right to "build roads, levees and install any and all facilities incident to lessee's present or future operations."[4]

Within 120 days of the inception of the lease, IDF was required to begin installing a 600-foot bulkhead[5] along the property.  The lease also notes that "[a]ny deterioration or failure of the bulk-head during the term of this lease shall be immediately repaired by Lessee at its sole cost and expense."[6]  The lease stated that any buildings and structures erected on the property would remain the property of the lessee; the lease gave the lessee the right to remove these improvements within sixty days after the termination of the lease, but did not require the lessee to do so.  The lease indicated, however, that the lessee would not have the right to remove the "bulkhead, fill, foundation, and cement slabs."[7]  The lease also states that the lessee "agrees to maintain the Leased Premises as a reasonably prudent administrator."

In 1992, IDF assigned its lease to plaintiff.[8]  Plaintiff is a Delaware corporation with its principal place of business in Texas.[9]  The assignment included all of IDF's "rights, title and interest in and to the Original Lease, together with all of [IDF's] interests in and to any

---

[3]Rec. Doc. No. 3-3, p. 2.

[4]Rec. Doc. No. 1-2, p. 2.

[5]A bulkhead is "a retaining structure used for shore protection and in harbor works." *Random College House Dictionary* 178 (1980).

[6]Rec. Doc. No. 1-2, p. 3.

[7]Rec. Doc. No. 1-2, p. 2.

[8]Rec. Doc. No. 1-2, p. 19.

[9]Rec. Doc. No. 1, p. 1.

buildings, improvements, fixtures and component parts" located on the property.[10] The assignment noted that IDF "makes no representation or warranty whatsoever that it holds ownership (fee simple title) of or to any of the improvements, property and equipment subject to this Agreement."[11] The improvements and equipment were assigned and transferred "as is, where is."[12]

Plaintiff contends that the leased premises were totally destroyed by Hurricane Katrina in August, 2005.[13] Allegedly, plaintiff terminated the lease, effective August 30, 2005, pursuant to the authority granted a lessee by Louisiana law where the leased property is partially destroyed or substantially impaired. Defendant has demanded that plaintiff restore the damaged bulkhead at its expense. Defendant argues that, prior to the arrival of Hurricane Katrina, plaintiff commissioned a study by Infinity Engineering Consultants, L.L.C. ("Infinity"), to evaluate the condition of the bulkhead. Defendant alleges that the Infinity study estimated it would cost $576,000 to repair the bulkhead and that plaintiff hid the results of this report.[14]

Plaintiff filed a petition for declaratory relief in this Court on July 13, 2006, seeking a declaration that it was entitled to terminate the lease, that defendant is obligated to reimburse plaintiff for over $78,000 in prepaid rent, and that any necessary repair to the bulkhead is the responsibility of defendant.[15] Defendant filed its motion to dismiss on September 1, 2006,

---

[10]Rec. Doc. No. 1-2, p. 19.

[11]Rec. Doc. No. 1-2, p. 20.

[12]Rec. Doc. No. 1-2, p. 20.

[13]Rec. Doc. No. 1, p. 2.

[14]Rec. Doc. No. 3-3, pp. 3-4.

[15]Rec. Doc. No. 1, p. 3.

arguing that plaintiff's action should be dismissed because (1) plaintiff failed to join IDF, an indispensable party, to the action, (2) joinder of IDF would defeat diversity and create a subject matter jurisdiction defect, and (3) plaintiff's petition fails to state a claim against defendant.

## *LAW AND ANALYSIS*

### I. Failure to Join a Party and Lack of Subject Matter Jurisdiction

Defendant first argues plaintiff's action should be dismissed pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure because plaintiff has failed to join IDF, an allegedly indispensable party. Rule 12(b)(7) allows for dismissal for "failure to join a party under Rule 19." "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003) (footnotes omitted).[16] The Court must first

---

[16]Rule 19 provides:

Persons to be Joined if Feasible. (a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

Determination by Court Whenever Joinder Not Feasible. (b) If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the

determine whether IDF should be joined to this lawsuit by analyzing the first subsection of Rule 19(a):

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

If IDF should be joined, however, the court must also consider subsection (b) to Rule 19. Because the addition of IDF as a party to this litigation would destroy diversity and, therefore, the Court's subject matter jurisdiction, the Court must weigh the factors of Rule 19(b) and decide whether to dismiss the action or allow it to continue without IDF. *Id.* at 327; *see also Siemens Bldg. Techs., Inc. v. Jefferson Parish*, No. 03-2272, 2004 U.S. Dist. LEXIS 16153, at *12 (E.D. La. Aug. 12, 2004). In making these determinations, "pragmatic concerns, especially the effect on the parties and on the litigation," will control. *Smith v. State Farm Fire & Cas. Co.*, 633 F.2d 401, 405 (5th Cir. 1980).

Considering the Rule 19(a) factors, the Court finds that IDF is not a party that should be joined to this action. First, the parties already present in this litigation may obtain complete relief in IDF's absence. Plaintiff's claims in this matter stem from the lease to which it is an assignee; plaintiff does not appear to contest that, as an assignee, it is bound by the rights and obligations of that lease. Certainly, the Court can determine whether the destruction of Hurricane Katrina warrants the termination of the lease pursuant to Louisiana law without the

---

plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

presence of IDF, the original leasee.  Similarly, the Court can judge the obligations created by the lease relating to repair of the bulkhead without IDF.  On this issue, plaintiff has not argued, as defendant suggests, that IDF is liable for the repairs because it was a prior lessee; instead, plaintiff argues that the terms of the lease, itself, saddle defendant with the burden of repair, regardless of when the damage occurred.[17]

Second, IDF does not appear to claim any interest in this matter, nor would the disposition of this case in IDF's absence prejudice any of the parties.  Plaintiff's claims are closely cabined, such that this Court's decision in the case will not impede IDF's ability to protect its interests or subject the present parties to multiple liability.  *See, e.g.*, *Overseas Dev. Disc Corp. v. Sangamo Constr. Co.*, 686 F.2d 498, 505 n.18 (7th Cir. 1982) ("Unless local law qualifies the rights of the assignee . . . or the assignor has repudiated the assignment, or the assignment is wholly executory, the assignor is not an indispensable [Rule 19(b)] party.  Even where the assignment is partial, the assignor and the assignee may be necessary parties, but they will not be indispensable [Rule 19(b)] parties.") (citation omitted) ; *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 670 (11th Cir. 1982) (finding that co-lessee was not an indispensible party where the parties to the litigation were the only parties with interests in the lease).  Because IDF is not a party that should be joined to this litigation, the Court finds no need to address the elements of Rule 19(b).  Without IDF, complete diversity of the parties is preserved, and the Court retains subject matter jurisdiction over the case.

---

[17]Plaintiff's petition does mention that "Tetra contends any necessary bulkhead repair is the result of a vice or defect in design, construction or composition."  Plaintiff's claims, however, do not seek to place responsibility for the bulkhead with IDF, but with LA Fruit.  Plaintiff's requested declaratory judgment only states that it is not liable for repair to the bulkhead; Tetra is not asking the Court for a finding with respect to IDF's responsibility, if any.  *See* Rec. Doc. No. 4-2, p. 7.

## II. Failure to State a Claim

A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted however. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The Court may, however, "consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)). In assessing the complaint, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Id.*; *Lowry v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

"However, '[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . .'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)) (alteration in original). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal quotation and citation omitted). Accordingly, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary

to obtain relief." *Id.* (internal quotation and citation omitted); *Blackburn*, 42 F.3d at 931 (internal quotation and citation omitted).

Defendant presents two arguments pursuant to Rule 12(b)(6): first, defendant contends that La. Civ. Code art. 2715 does not support the termination of the lease due to its partial destruction; second, defendant argues that plaintiff is responsible for the repair of the bulkhead.

**A. Termination of the Lease Pursuant to La. Civ. Code art. 2715**

Article 2715 of the Louisiana Civil Code, entitled "Partial destruction, loss, expropriation, or other substantial impairment of use," provides:

> If, without the fault of the lessee, the thing is partially destroyed, lost, or expropriated, or its use is otherwise substantially impaired, the lessee may, according to the circumstances of both parties, obtain a diminution of the rent or dissolution of the lease, whichever is more appropriate under the circumstances. If the lessor was at fault, the lessee may also demand damages.
>
> If the impairment of the use of the leased thing was caused by circumstances external to the leased thing, the lessee is entitled to a dissolution of the lease, but is not entitled to diminution of the rent.

Defendant argues that the disputed lease was a "ground lease" that left plaintiff with ownership of, and responsibility for, any building, docks, or other structures on the land. Defendant cites a provision in the lease specifying that "[a]ny and all buildings, and other structures erected by Lessee shall be and remain the property of Lessee."[18] Defendant argues that, because the ground that was leased was not destroyed by Hurricane Katrina, the lease cannot be terminated pursuant to article 2715. In its opposition, plaintiff argues that the leased premises included the buildings and structures on the land; plaintiff cites to the lease's description of the property as "[a] certain

---

[18] Rec. Doc. No. 1-2, p. 2.

piece or portion of ground, together with all the buildings and improvements thereon."[19]

Plaintiff contends that, because the leasehold improvements were destroyed by the effects of Hurricane Katrina and plaintiff's use of the leased property has been substantially impaired, the lease may be dissolved. The parties' respective arguments require the Court to examine the terms of the lease.

A lease contract defines the respective rights and obligations of the lessor and lessee. *Frey v. Amoco Prod. Co.*, 603 So. 2d 166, 172 (La. 1992). The general rule in Louisiana is that leases are contracts and should be interpreted according to the customary principles of contract interpretation.[20] *See Solo Serve Corp. v. Westowne Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991) (citing *Thomas v. Knight*, 457 So. 2d 1207, 1209 (La. App. 1st Cir. 1984), and *Aguillard's Enters. Inc. v. Smith*, 439 So. 2d 1158, 1160 (La. App. 4th Cir. 1983), *writ denied*, 444 So. 2d 1224 (La. 1984)). In a lease contract, the rules of the Civil Code "become applicable for *filling any gaps* in the parties' agreement and for determining its overall validity and effectiveness." La. Civ. Code art. 2668 cmt. (e) (emphasis added). As the Louisiana Supreme Court has held,

---

[19] Rec. Doc. No. 1-2, p. 14.

[20] The Fifth Circuit has stated the controlling principles for contract interpretation under Louisiana law:

(1) Every provision of the contract must be interpreted in light of the contract's other provisions in order to give each provision the meaning suggested by the contract as a whole; (2) Contract provisions susceptible to different meanings should be interpreted so as not to neutralize or ignore any provision or treat any provision as mere surplusage and so as to preserve the validity of the contract; and (3) "'A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.'" Only if these rules do not resolve the issue of how to interpret the contractual provision at issue should the provision be interpreted against the party that drafted it, which default rule applies, in any event, "only ... when there are two equally reasonable interpretations of the contractual provision in question."

*In re Liljeberg Enters., Inc.*, 304 F.3d 410, 443 (5th Cir. 2002).

> [T]he codal articles and statutes defining the rights and obligations of lessors and lessees are not prohibitory laws which are unalterable by contractual agreement, but are simply intended to regulate the relationship between lessor and lessee when there is no contractual stipulation imposed in the lease. . . . Our jurisprudence is that the usual warranties and obligations imposed under the codal articles and statutes dealing with lease may be waived or otherwise provided for by contractual agreement of the parties as long as such waiver or renunciation does not affect the rights of others and is not contrary to the public good.

*Tassin v. Slidell Mini-Storage, Inc.*, 396 So. 2d 1261, 1264 (La. 1981) (internal citations omitted).

The "interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.* art. 2046. "The fact that one party can, in hindsight, create a dispute about the meaning of a contractual provision does not render the provision ambiguous. The court must give effect to the ordinary meaning of the words and may not create an ambiguity where none exists." *Esplanade Oil & Gas, Inc. v. Templeton Energy Income Corp.*, 889 F.2d 621, 623-24 (5th Cir. 1993) (citing *Comm. Union Ins. Co. v. Advance Coating Co.*, 351 So. 2d 1183, 1185 (La. 1977)).

Where there is ambiguity in the terms of a contract, however, a fact question exists concerning the intent of the parties. *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel*, 89 F.3d 243, 246 (5th Cir. 1996) (citing *Couvillion v. Shelter Mut. Ins. Co.*, 672 So. 2d 277 (La. App. 1st Cir. 1996)). "Under Louisiana law, a contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *Lloyds of London v. Transco. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996) (citing *Am. Druggists Ins. Co. v. Henry Contracting*

*Inc.*, 505 So. 2d 734, 737 (La. App. 3d Cir. 1987)).

On the first page of the lease, the leased premises are defined as that property described in an exhibit to the lease, Exhibit A. Exhibit A describes "[a] certain piece or portion of ground, *together with all the buildings and improvements thereon* and all rights, ways, privileges, servitudes, appurtenances and advantages thereunto."[21] This plain language of the lease indicates that, in 1984, defendant intended to lease the ground as well as all buildings and improvements then on the property to IDF. The lease also makes provisions for improvements later constructed by the lessee. The lease provides that the lessee has the right to erect buildings on the leased premises and that "any and all buildings and other structures *erected by lessee* shall be and remain the property of lessee."[22] According to the lease terms, the lessee has the right to remove these later-constructed improvements within sixty days after the termination of the lease, though the lessee is not required to do so. The Court finds that the plain language of the lease indicates the parties' intent that, while structures on and improvements to the property existing at the time of the original lease were part of the leased premises, later-constructed improvements were not.

The language of the assignment document also bears out this interpretation. The assignment explains that IDF "wishes to assign and transfer . . . title and interest in and to the Original Lease" to plaintiff, "together with all of [IDF]'s interest in and to any buildings, improvements, fixtures and component parts located on the Leased Premises."[23] The bifurcated

---

[21] Rec. Doc. No. 1-2, p. 14 (emphasis added).

[22] Rec. Doc. No. 1-2, p. 2 (emphasis added).

[23] Rec. Doc. No. 1-2, p. 19.

11

language here, differentiating between (1) IDF's interest in the lease and (2) its interest in buildings and improvements located on the leased premises, further suggests the parties understood that improvements to the land would not be considered part of the leased premises.[24]

The lease required lessee to construct a 600-foot bulkhead within 120 days of the inception of the lease; the lease indicated that lessee would not have the right to remove this bulkhead after the expiration of the lease. Rec. Doc. No. 3-4, p. 2. The lease also obliges the lessee to maintain the bulkhead during the lease period: "Any deterioration or failure of the bulkhead during the term of this lease shall be immediately repaired by lessee at its sole cost and expense."[25] The Court does not agree, however, with plaintiff's conclusion that the lease contemplated that the bulkhead and other improvements "would become part of the leased premises."[26] The bulkhead is not mentioned in Exhibit A to the lease, which describes the leased premises. And while the bulkhead is excepted from the provision allowing the lessee to remove improvements at the termination of the lease, it is not excepted from that provision specifying that all structures erected by the lessee will remain the property of the lessee.

Considering the plain, unambiguous language of the lease, the Court finds that the parties intended that the buildings and other improvements to the land constructed after the inception of the lease would not be considered part of the leased premises. The leased land was vacant at the

---

[24] The language in the assignment stating that "Assignor makes no representation or warranty whatsoever that it holds ownership (fee simple title) of or to any of the improvements, property and equipment subject to this Agreement" is of no moment to the Court's analysis. Rec. Doc. No. 3-4, p. 20. IDF's statement in this assignment disavowing any representation or warranty as to ownership of the improvements does not contradict the plain language of the lease, which states that the structures erected by the lessee during the lease term would remain the property of the lessee.

[25] Rec. Doc. No. 1-2, p. 20.

[26] Rec. Doc. No. 4-2, p. 15.

lease's inception in 1984,[27] and because there are no allegations that the land itself was destroyed or substantially impaired by damage caused by Hurricane Katrina,[28] the Court finds that it appears beyond doubt that plaintiff can prove no set of facts to supports its claim that the lease has been terminated pursuant to article 2715. Accordingly, plaintiff's claim for judgment declaring that plaintiff was entitled to terminate the lease effective August 30, 2005, or that defendant is obligated to reimburse plaintiff for prepaid and unearned rent for the period September 1, 2005, to May 30, 2006, must be dismissed.

**B. Bulkhead Repair**

In its petition, plaintiff contends that "any necessary bulkhead repair is the result of a vice or defect in design, construction or composition which is within the scope of Defendant's non-delegable legal warranty of the premises under La. Civ. Code art. 2684 and 2696."[29] Article 2684 provides that a "lessor is bound to deliver the thing at the agreed time and in good condition suitable for the purpose for which it was leased." Article 2696 provides that "[t]he lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose. This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of

---

[27]Rec. Doc. No. 3-3, p. 2.

[28]Plaintiff's petition implicitly suggests that the land itself was totally destroyed by the storm: "The Leased Premises included land, buildings, dock and other improvements located at Venice, Louisiana, which were totally destroyed as a result of Hurricane Katrina in August 2005." Rec. Doc. No. 1, p. 2 ¶5. Plaintiff's opposition memorandum, however, concedes this argument, explaining that plaintiff will give defendant "the benefit of the technical argument that the storm did not destroy the ground." Rec. Doc. No. 4-2, p. 16. Plaintiff's arguments as to the destruction or substantial impairment of the leased premises, then, relate only to the structures and improvements on the land, not the land itself. The Court does not reach the issue of whether article 2715 contemplates the destruction or substantial impairment of the land itself.

[29]Rec. Doc. No. 1, p. 2.

the lessee."  The above discussion regarding the extent of the leased premises, however, moots plaintiff's argument.  Because the bulkhead cannot be considered part of the leased premises, articles 2684 and 2696 cannot apply.

Additionally, the terms of the lease that plaintiff was assigned make clear that repairing any deterioration of the bulkhead was the responsibility of the lessee.[30]  As stated above, Louisiana law holds that the rules of the Civil code "become applicable for *filling any gaps* in the parties' agreement and for determining its overall validity and effectiveness."  La. Civ. Code art. 2668 cmt. (e) (emphasis added); *see also Tassin*, 396 So. 2d at 1264.  To the extent that plaintiff has any claim regarding damage to the bulkhead occurring prior to its assumption of the lease, such claims would lie against IDF.  Accordingly, plaintiff's claims for declaratory judgment with respect to the bulkhead repairs must be dismissed as well.

Accordingly,

**IT IS ORDERED** that the motion to dismiss for failure to join a party, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted, filed by defendant, the Louisiana Fruit Company,[31] is **GRANTED** for plaintiff's failure to state a claim, and plaintiff's petition for declaratory judgment is **DISMISSED with prejudice**.

New Orleans, Louisiana, January __5th__, 2007.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[30]Rec. Doc. No. 1-2, p. 3.

[31]Rec. Doc. No. 3.